## CRAWFORD v. TENNESSEE GAS TRANSMISSION CO.
### No. 4818.

Court of Civil Appeals of Texas. Beaumont.
May 15, 1952.

Rehearing Denied June 25, 1952.

Houston Thompson, Silsbee, for appellant.

J. E. Wheat, Woodville, for appellee.

R. L. MURRAY, Justice.

The appellant H. R. Crawford, and his wife, executed and delivered to Tennessee Gas & Transmission Company, the predecessor in title of appellee, the following easement and right of way agreement over his land in Tyler County:

"Right of Way Agreement
"State of Texas
County of Tyler

"Know All Men By These Presents: That the undersigned, H. R. Crawford and Sallie Crawford, his wife, (hereinafter called Grantor, whether one or more); for and in consideration of the sum of Thirty Four and No/100 ($34.00) Dollars, in hand paid, receipt of which is hereby acknowledged, does hereby grant, bargain, sell and convey unto Tennessee Gas and Transmission Company, a Tennessee corporation, its successors and assigns (hereinafter called Grantee), a right of way and easement for the purposes of laying, constructing, maintaining, operating, altering, replacing, and removing pipe lines (with necessary fittings and appliances) for the transportation of oil, gas, petroleum products or any other

liquids, gases or substances which can be transported through a pipe line, and of erecting, maintaining and removing a line of poles and appurtenances thereto for the operation thereon of telephone and telegraph wires, the Grantee to have the right to select the route, under, upon, over and through the lands of Grantor, situated in the County of Tyler, State of Texas, described as follows:

"Being 8.4 acres more or less part of the E. F. Hanks League, Abstract No. 20 and being the same land conveyed to H. R. Crawford by Eddie J. Gauthreaux and wife by deed dated October 30, 1941, recorded in Volume 95, pages 516 and also the same land conveyed to Eddie J. Gauthreaux and wife by D. P. Mann, July 16, 1932, by deed recorded in Volume 69, page 338 Deed Records of Tyler County, Texas, which deeds are hereby referred to and made part hereof for all purposes.

"There is included in this grant the right to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time one or more additional lines of pipe adjacent to and parallel with the first pipe line laid by grantee on said right of way; but for each such additional line so laid grantee shall pay grantor One and No/100 * * * cents per lineal rod of such additional line. The grantee, its successors and assigns, are hereby expressly given and granted the right to assign this right of way and easement, or any part thereof, or interest therein, and the same shall be divisible among two or more owners, as to any right or rights created hereunder, so that each assignee or owner shall have the full rights and privileges herein granted, to be owned and enjoyed either in common or severally.

"The grantee shall have all other rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, including, but without limiting the same to, the free right of ingress or egress over and across said lands to and from said right of way and easement.

"To Have and To Hold said right of way and easement, unto said grantee, its successors and assigns, until such first pipeline be constructed and so long thereafter as a pipeline or a telephone line or a telegraph line is maintained thereon; and the undersigned hereby bind themselves, their heirs, executors and administrators (and successors and assigns) to warrant and forever defend all and singular said premises unto the Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"The undersigned Grantor, his successors, heirs or assigns, reserves the right to fully use and enjoy said premises except as the same may be necessary for the purposes herein granted; providing, however, that the Grantee shall have the right from time to time to cut and keep clear all trees, under growth and other obstructions, whether on said right of way and easement or not, that may injure, endanger or interfere with the use of said pipe lines or telephone lines or telegraph lines or fittings and appliances appurtenant to any of said lines.

"The Grantee, by the acceptance hereof, agrees to bury all pipe lines so that they will not interfere with the cultivation of the land, and also to pay for any damage to crops, fences and timber, which may arise from laying, constructing, maintaining, operating, altering, repairing, removing, changing the size of, and replacing such pipe lines. Said damage, if not mutually agreed upon, to be ascertained and determined by three disinterested persons; one to be appointed by the undersigned Grantor, his successors, heirs or assigns; one by the Grantee, its successors or assigns, or in case of more than one ownership of said right of way and easement such appointment shall be made by the Grantee, its successors or assigns, against whom damages are claimed; and the third

by the two persons aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive.

"Any payment hereunder may be made direct to the grantor, or to ――――, who is hereby appointed agent and authorized to receive and receipt for the same, or said payment may be made by check of Grantee payable to the Grantor or agent and mailed to the Grantor at ―――― or to the above named agent at ――――; or, at the option of Grantee, such payment may be made by depositing the same in ―――― Bank, at ――――, to the credit of Grantor, or said agent, said bank, and its successors, being hereby designated as the depository for such purposes, irrespective of any future change in the ownership of the lands hereinabove described. Should there be any change in the ownership of said lands, then such deposit shall be made in the aforesaid depository to the credit of those acquiring said lands, but no change in ownership of said lands shall be binding upon Grantee until the muniment of title by which such change becomes effective has been placed of record in the County wherein such lands are located and a certified copy thereof delivered to Grantee.

"It is mutually understood and agreed that this right of way grant as originally written covers all the agreements and stipulations between the parties and that no representations or statements verbal or written have been made, modifying, adding to, or changing the terms of said original right of way agreement.

"In Testimony Whereof, the Grantors herein have executed this conveyance this 20th day of January, 1944.

"H. R. Crawford

Sallie Crawford"

(Acknowledgments)

This appeal must turn upon the meaning and construction of the above agreement.

Under the authority granted in the above agreement the appellee laid the first pipe line across the appellant's land about January 20, 1944. Since that time they have put in two more pipe lines on the land, one on each side of the first pipe line laid down. The appellant objected to the construction of the third pipe line and ordered the crews of the appellee off his land when they attempted to go upon it. The suit was first filed by the appellee, seeking a restraining order to prevent the appellant from interfering with the construction of the pipe line. The restraining order was granted by the trial court and the pipe line was completed. The first amended petition on which the instant case was tried was filed November 6, 1951, after the completion of the third pipe line, and sought to restrain the appellant from interfering with the maintenance and operation of said line. The appellant contested the suit and also filed a cross-action for damages for the construction of that pipe line, alleging that the original entry was illegal in that the right of way agreement under which the appellee constructed said pipe line did not authorize the construction of another line; that therefore the appellee was a trespasser and liable to the appellant for damages arising from such trespass. The trial court decided that the above right of way agreement did authorize the construction of additional pipe lines and enjoined the appellant from interfering with or preventing appellee from maintaining and operating the pipe lines.

On appeal appellant has three points by which he maintains (1) that the term "right of way" was unclear and ambiguous and parol evidence should have been admitted by the court to clear up the ambiguity; (2) the trial court should not have granted the appellee's motion to dismiss appellant's cross-action; (3) the trial court should not have instructed the jury to return a verdict for the appellee. All of said points depend upon the correctness vel non of appellant's construction of the right of way agreement. He argues that in said agreement there is no mention made of the width of the right of way granted and he contends in his brief and by his testimony on the trial that he had granted a specific right of way 50 feet in width and that the

appellee and its assigns could build as many pipe lines along said 50 foot right of way as it pleased so long as the pipe lines were adjacent to and parallel to the first pipe line in place. He argues that the words used in said right of way agreement were doubtful and uncertain or susceptible to more than one meaning, in regard to the amount of land specifically·contained in the grant, and therefore parol evidence should have been admitted to clear up the ambiguity. He further argues that his belief that he had granted only a 50 foot right of way is substantiated by the wording of the agreement; that the wording shows that the appellee company had the right to select the route under, upon, over, and through the lands of the appellant and this indicated that since the word "through" was used there was intention to leave some of the land of the appellant outside of the right of way; that the instrument calls for the pipe lines to be adjacent to each other and that fact indicates that the intention was to involve a narrow strip and not involve all the land; that under the instrument the grantee gave the right of ingress and egress over and across said lands to and from said right of way and easement, which indicates that there is land other than that covered by the right of way granted. He further argues that because of the provision in the right of way agreement that if the appellant laid an additional pipe line adjacent and parallel to the first pipe line it would pay to the appellant $1.00 per lineal rod of such additional line, it is clear, he says, that the amount of land involved was to be a small narrow strip. The agreement also gives the appellee the authority to select the route, and he argues that this also indicates that the land involved was not the whole 8.4 acres and that the grantors conveyed the right of way over only one part of the land.

With this argument we do not agree. The appellant's proposition of law is correct that parol evidence is admissible to explain ambiguous instruments. The appellee does not dispute this proposition. The appellee does argue, however, that the right of way agreement is not ambiguous, because of its failure to mention the width of the right of way. We agree with this construction of the right of way agreement and approve the action of the trial court, based upon such construction. On the authority of Lewis v. East Texas Finance Company, 136 Tex. 149, 146 S.W. 2d 977, by the Supreme Court, we hold that the words used in the right of way agreement can be given a certain definite legal meaning or interpretation and it is not ambiguous. It follows that parol evidence was not admissible to show the meaning of the contract when such meaning was clear from the contract itself. "It is a well settled rule of easements that, where there is no stated width in a grant creating a right of way, the grantee is entitled to a suitable and convenient way, which will be determined by its sufficiency to afford ingress and egress to the owner and occupants of the dominant estate, what is suitable and convenient being dependent upon the purposes of the grant and the circumstances of the case. Thus, if the grant states merely the object for which the way is granted, the dimensions must be inferred to be such as are reasonably sufficient for the accomplishment of that object". 28 C.J.S., Easements, § 77, page 757. In Lone Star Gas Co. v. Childress, Tex.Civ.App., 187 S.W.2d 936, the court considered a right of way agreement very similar to the one under examination here. The width of the right of way was not specified and the parties got into a controversy over how much land had been granted under the easement or right of way agreement. The Court held that the grantee could use as much of the land as each occasion might reasonably demand. We are unable to understand how the appellant here first conceived the notion that he had granted a right of way 50 feet of land only. The instrument itself does not limit the pipe line operations of the appellee to any specific width of land. The appellant might just as well have believed that he had granted a right of way of only 40 feet or 30 feet, or 100 feet, of the land involved, so far as any expression in this regard can be found in the instrument. From his testimony he knew for what purposes

the line was being laid and that some use for its maintenance and upkeep was necessary. He does not, by his pleadings or testimony, maintain that any fraud or mistake occurred which caused him to sign an agreement different from that which he thought he was signing. Since the agreement is full and states the use to be made of the right of way granted, any attempt by the courts to limit the appellee to a certain portion of the land would alter the stated purpose for which the grant was made. We believe the appellee's position in this matter is correct and that the trial court was correct in its actions.

The second and third points of the appellant must depend, for their application, upon the correctness of appellant's first point. Since we have determined that the contract was not ambiguous and that under its provision the appellee company had the right to lay the additional lines on the route selected by it over the appellant's land, and was not restricted to a 50 foot strip of land for the purpose of laying and maintaining its pipe lines, all three of the appellant's points will be overruled.

Believing that the record shows that the trial court was correct, the judgment will be affirmed.