**LAKESIDE LAUNCHES, INC., Appellant,**

v.

**AUSTIN YACHT CLUB, INC., et al., Appellees.**

No. 3–86–122–CV.

Court of Appeals of Texas, Austin.

May 4, 1988.

Rehearing Denied June 15, 1988.

Thomas M. Booker, Arnold & Booker, Austin, for appellant.

Larry Parks, Long, Burner & Cotten, Austin, for appellees.

Before SHANNON, C.J., and BRADY and ABOUSSIE, JJ.

BRADY, Justice.

This cause involves an easement on Lake Travis. Appellees brought suit for declaratory and injunctive relief to prevent appellant Lakeside Launches, Inc., from crossing below the 670–foot–contour line of Lake Travis to anchor and float a commercial boat-dock in connection with appellant's dry-boat-storage facilities on an adjoining tract of land. At trial the jury found that the subdivision restrictions did not apply to appellant and that the appellees were estopped to deny appellant's easement to anchor and float a commercial boat-dock below the 670–foot–contour line of Lake Travis. However, the trial court granted appellees' motion non obstante veredicto and held that, as a matter of law, the easement is for the purposes of ingress and egress only, denying appellant an easement to anchor and float a commercial boat-dock below the 670–foot–contour line. We affirm.

Lakeside Launches brings two points of error. First, that the trial court erred in ruling as a matter of law that the 1955 easement was an easement of ingress and egress *only* and excluding parole evidence as to the intent of the parties; and, second, that the trial court erred in disregarding the jury's answer to special issue number two in which the jury found creation of an easement by estoppel. By cross-point, appellees argue there is insufficient evidence to support the jury's answer to Special Issue # 2.

## BACKGROUND

To understand the nature of this suit, it is necessary to recite a brief history of the Lake Travis property that is the subject of this dispute. The original grantor of all of the property above and below the 670–foot Lake Travis contour line was E.A. Gathright. In 1930, E.A. Gathright conveyed the property above the 670–foot–contour line to his brother, Denton L. Gathright. In 1945, Denton sold the property above the 670–foot–contour line to the Rittenhouses, who divided the property with their daughter and son-in-law, Sylvia and Raymond Allen in 1947.

The Allen tract lies between two coves on Lake Travis—Poole Canyon and Beacon Cove. On this property, the Allens operated a lodge where they rented cottages and

maintained a swimming float, diving platform and a boat dock for the use of their paying guests. At this boat dock, the Allens also kept rental boats. When the waters of Lake Travis were below the 670–foot–contour line, the Allens would move their floating docks out into the lake, presumably to float over land below the 670–foot–contour line.

In 1955, the Allens sold this tract to Mr. and Mrs. Carl Balgemann. The Balgemanns wished to expand the existing facilities and, concerned with access to the water, sought a more specific easement from E.A. Gathright as a condition of their purchase of the property. The Allens obtained from E.A. Gathright the following easement:

> an easement and right-of-way over and across all of the land lying between the above described 670–foot–contour line and the waters of Lake Travis, irrespective of any variances in the water level which may occur from time to time, but provided, however, that neither the grantees nor their heirs or assigns shall at any time trespass upon any improved property owned by the grantors, their heirs or assigns.

The Allens, in their deed to the Balgemanns, conveyed this easement. The Balgemanns proceeded with their planned expansion of the lodge facilities. At the end of their property leading into Poole Canyon, they built a boat ramp to the water with a gasoline storage tank located on the land adjacent to the ramp, from which they sold gasoline to boaters. The Balgemanns also added a floating dock, located near the end of the concrete ramp, so that the boaters wishing to purchase gasoline for their boats could dock while doing so. When the level of Lake Travis fell below the 670–foot–contour line, which occurred on several occasions, the floating docks or platforms would be extended out as far as necessary to accommodate their use. Both Mrs. Allen and Mrs. Balgemann testified that throughout the period from 1947 to 1957, E.A. Gathright never objected to any of the floating facilities located on the water above the 670–foot–contour line.

In 1957, the Balgemanns conveyed the property back to the Allens, with the exception of the dock and gasoline tank located at Poole Canyon, which the Balgemanns sold separately and removed from the property. In 1960, the Allens sold what is now the Lakeland Hills Lakeside portion of their tract to Lakeland Hills Development Corporation. In 1984, Vira Corporation acquired this tract and in 1985 Lakeside Launches acquired the property, which includes the now subdivided Lot 19, whose lower boundary line is the 670–foot–contour line.

In 1963, the fee title to property below the 670–foot–contour line, originally owned by E.A. Gathright, was conveyed to a Mr. Keller, then to Price, et al, a trustee of the Austin Yacht Club, and finally, in 1971, to the appellees. Additionally, the Austin Yacht Club owns a private sailing facility adjoining the Lakeside Launches public-boat-storage facility. The parties do not dispute that the Lakeside Launches chain of title includes the original Gathright-to-Allen easement. The dispute concerns the scope of that easement.

### DISCUSSION

A. *The scope of the express easement.* Appellant argues the use of the words "easement and right-of-way" on the face of the instrument creates an ambiguity as to the interest created. Further, appellant argues the scope of the easement is unrestricted, since no express purpose appears on the face of the instrument to limit the use appellant may make of the easement.

Construction of an unambiguous instrument is a question of law. *Wall v. Lower Colorado River Authority,* 536 S.W.2d 688, 691 (Tex.Civ.App.1976, writ ref'd n.r.e.). A writing is ambiguous if application of the pertinent rules of interpretation to the face of the instrument indicates genuine uncertainty as to which one of two or more meanings is the proper one. *Capitol Rod & Gun Club v. Lower Colorado River Authority,* 622 S.W.2d 887, 894 (Tex.App.1981, writ ref'd n.r.e.) We believe the meaning of the instrument

in question can be ascertained by applying applicable rules of interpretation.

An easement confers upon one person the right to use the land of another for a specific purpose. *Magnolia Petroleum Co. v. Caswell,* 1 S.W.2d 597, 600 (Tex. Comm.App.1928, jdgmt. adopted). The use of the word easement in the Gathright grant does not, by itself, define the scope and purpose intended by the grantor. However, the use of the word "right-of-way" in conjunction with "easement" delineates the scope and purpose of the grant.

Right-of-way, when used alone, can have more than one meaning: it may denote either a right of passage or the right-of-way strip of land itself. *S.H. Oil & Royalty Co. v. Texas & New Orleans Railroad Co.,* 295 S.W.2d 227, 230–31 (Tex. Civ.App.1956). However, an easement does not convey the property itself. *Magnolia Petroleum Co.,* 1 S.W.2d at 600. Therefore, the only reasonable reading of "easement and right-of-way" in the Gathright grant is one in which the term right-of-way is used to mean right-of-passage over and across all of the land lying between the 670–foot–contour line and the waters of Lake Travis.

Having determined the easement granted to be a right of passage, we turn to a determination of the scope of that easement. In so doing, we may imply only those rights reasonably necessary to the fair enjoyment of the easement with as little burden as possible to the servient owner. *Coleman v. Forister,* 514 S.W.2d 899, 903 (Tex.1974). Where the grant does not state the width of the right-of-way created, the grantee is entitled to a suitable and convenient way sufficient to afford ingress and egress to the owner of the dominant estate. *Crawford v. Tennessee Gas Transmission Co.,* 250 S.W.2d 237, 240 (Tex.Civ.App.1952, writ ref'd). This language requires this Court to render the easement certain to the extent reasonably necessary to afford ingress and egress to the owner of the dominant estate and no more. Since the words used in the easement can be given a certain and definite legal meaning, it is not ambiguous. *Id.* at 240. Finally, where the meaning is clear from the grant itself, it follows that parole evidence is not admissible to show the meaning of the grant. *Id.*

We hold as a matter of law that the 1955 easement from E.A. Gathright to W.B. Rittenhouse, Et ux, and Raymond and Sylvia Allen is an easement of ingress and egress only. Therefore, because no ambiguity exists on the face of the instrument, the trial court properly excluded parole evidence of the grantee's intent with regard to the easement. Appellant's first point of error is overruled.

B. *Easement by estoppel.* Appellant next argues that E.A. Gathright failed to object to the floating platforms and docks which the Allens and Balgemanns placed below the 670–foot–contour line in Poole Canyon and Beacon Cove. This silence was a "representation," which appellant believed and relied upon and which resulted in an easement by estoppel that conferred on these grantees the right to anchor and float a commercial boat-dock below the 670–foot–contour line at Poole Canyon. As the current owner of the tract, appellant maintains it has succeeded to this easement by estoppel and may now construct, anchor and float a commercial boat-dock below the line as well. We disagree.

The basic elements of easement by estoppel are: (1) a representation communicated to a promisee; (2) the communication is believed; and, (3) reliance on the communication. *Storms v. Tuck,* 579 S.W.2d 447, 451 (Tex.1979). The principle of estoppel by silence arises where a person is under a duty to another to speak, but refrains from doing so and thereby leads the other to act in reliance on a mistaken understanding of the facts. *Id.* at 452.

Since neither party disputes the existence of the easement, the question before us is whether E.A. Gathright, by his silence, represented to the Allens or the Balgemanns that the easement over and across the land between the 670–foot–contour line and the water included the right to anchor and float a commercial dock below the 670–foot–contour line.

Special issue number 2 asked the jury whether the Austin Yacht Club is estopped from denying Lakeside Launches, Inc., an easement to anchor and float a commercial boat-dock below the 670–foot–contour line of Lake Travis adjacent to Lot 19 of Lakeland Hills Lakeside subdivision. The jury answered affirmatively. In connection with this issue, the jury was instructed that a land owner is estopped from denying an easement to an adjacent land owner when: (1) the landowner or a predecessor to his interest makes a representation to the adjacent landowner or a predecessor to the adjacent landowner's interest that certain rights exist to use the landowner's property; (2) the adjacent landowner believes such representation to be true; and (3) the adjacent landowner relies upon such representation. A "representation" may be either by express words or by failure to speak when under the circumstances there is a duty to speak, and such failure to speak leads another to believe in the existence of a state of facts in reliance upon which the others acts to his prejudice. Appellees made a "no evidence" objection to this issue, but did not object to the form of the issue or the instruction.

■ In sustaining the judgment non obstante veredicto, this Court must determine that there is less than a scintilla of evidence upon which the jury could have made findings against appellees; and in making such determination, this Court must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings of the jury, and rejecting all evidence and inferences contrary thereto. *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980). In reviewing a factual sufficiency challenge, the Court must weigh and consider all of the evidence and may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Cain*, 709 S.W.2d 175, 176 (Tex.1986).

This Court has examined the record in keeping with the above rules of review. We find no evidence to support a finding that E.A. Gathright represented through his silence that the Allen, or the Balgem-

ann, easement included the right to anchor and float a commercial boat-dock below the 670–foot–contour line at Poole Canyon adjacent to what is now Lot 19.

The record discloses that the Allens never anchored or floated a dock at that location. Furthermore, although the Balgemanns had a floating dock at that location between 1955 and 1957, there is no evidence in the record to show that the dock was anchored below the 670–foot–contour line. Absent such a showing, we cannot say that E.A. Gathright had a duty to speak. While there were facilities *on the water* above the 670–foot–contour line, there is no evidence the permissive use over and across the land between the 670–foot–contour line and the water of Lake Travis had been exceeded by *the anchoring* of the dock to the land below the 670–foot–contour line.

Appellant also argues it relied upon the representations made to the Allens and the Balgemanns by Gathright. Disregarding for the moment our determination that Gathright had no duty to speak, and assuming arguendo a representation, we do not find reliance by the appellant.

■ In order to create an easement by estoppel, something must be said or done by the owner of the servient estate at the time of the grant of the dominant estate that induces the acceptance of the grant. *Rogers v. Hussion*, 273 S.W. 969, 972 (Tex. Civ.App.1925, writ dism'd). We find nothing in the words or deeds of E.A. Gathright at the time he granted the easement to the Allens creating or promising a use that included the right to anchor and float a commercial boat-dock below the 670–foot–contour line and thereby inducing the Allen purchase. Nor do we find that appellant relied upon the representations of Mrs. Allen or Mrs. Balgemann as conferring the right to anchor and float a commercial boat-dock.

■ The record shows that at the time Lakeside Launches acquired the property, Mr. Prewitt, acting for Lakeside Launches, was unaware of the prior commercial use by either the Allens or Balgemanns in the 1950s. In fact, he did not learn of it until the Austin Yacht Club had indicated it

would challenge Lakeside Launches' intended use. At that point, he visited both Mrs. Allen and Mrs. Balgemann to learn what use each had made of the property while each had owned it. Even then, he did not believe their representations were sufficient to support his relying upon them for the construction of the commercial-boat dock contemplated by Lakeside Launches. By his own testimony, Prewitt admits he felt he had to "purchase" from Mrs. Allen an additional 150–foot easement to strengthen his rights. This transaction was executed despite the fact she no longer owned the property. Even had Mrs. Allen still owned the property, she could not grant such an interest, for the party granting an easement must be the one who has a vested interest in the *servient* estate. *Brown v. Woods,* 300 S.W.2d 364, 366 (Tex. Civ.App.1957, no writ) (emphasis added).

■ Finally, no easement by estoppel may be imposed against a subsequent purchaser for value, who has no notice, actual or constructive, of the easement claimed. *Callan v. Walters,* 190 S.W. 829, 831 (Tex. Civ.App.1916, no writ). Appellant maintains that the concrete ramp built by the Balgemanns, which extended below the 670–foot–contour line at Lot 19, was notice to the Yacht Club to inquire of the previous owners as to the purpose of the ramp and other uses with which it was associated. We disagree. The ramp was consistent with the permissive use for ingress and egress found in the deed and, where such is reasonably necessary to the enjoyment of the use granted, the Yacht Club is not required to inquire about a possible higher use. *Id.* at 831–32.

The trial court did not err in disregarding the jury's answer to special issue number 2 because there is no evidence of probative force to support the finding of easement by estoppel. Appellant's second point is overruled. Appellees' crosspoint is sustained.

We affirm the judgment of the trial court.