In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00310-CV
_____

JASON BARNETT, Appellant

V.

CHARLES MICHAEL HAVARD JR., Appellee

On Appeal from the 1st District Court
Jasper County, Texas
Trial Cause No. 31557

MEMORANDUM OPINION

Appellant Jason Barnett appeals the trial court's judgment in favor of appellee Charles Michael Havard Jr., which declared the scope of an easement and the respective rights of Barnett as owner of the servient estate and Havard as owner of the dominant estate. Barnett challenges the trial court's interpretation of the express easement and the trial court's dismissal of his trespass and negligence per se claims. We affirm the trial court's judgment in part and reverse and render in part.

1

**Factual and Procedural History**

Valerie Maynard co-owned a piece of property in Jasper County, Texas. Havard's grandfather owned an adjacent piece of property to Maynard's property. In 1974, Maynard conveyed an easement across her property to Havard's grandfather. The easement granted the following to Havard's grandfather:

> the free and uninterrupted use, liberty and privilege of the passage in, along, upon and across the existing right-of-way from the location where it leaves the north side of County Road and crosses our land out of H. T. & B. Section 1, Abstract 1079 in Jasper County, Texas, and Abstract 232 in Newton County, Texas, and goes into lands now owned by Charles M. Havard out of H. T. & B. Section 9, Abstract 1078 in Jasper County, Texas, and Abstract 177 in Newton County, Texas.
> The purpose of this easement is to provide the perpetual right of passage to the Grantee, his heirs or assigns.

The road that provides passage to Havard's property under the easement is known as Private Road 8395, and generally runs due south from the southern boundary of Havard's property. Havard's grandfather conveyed the property to his wife, Havard's grandmother, who ultimately conveyed the tract of land to Havard in June 2002. Havard has resided on the property and has continuously used the easement since that time.

In 1983, Valerie Maynard conveyed her forty-five-acre tract of land to MWI Land, Inc. The forty-five-acre conveyance was expressly made subject to two easements, the easement to Havard's property and an easement to Gulf States

Utilities Company ("GSU"). Barnett introduced into evidence a land survey that was prepared for MWI Land in 1985, when it purchased the land from Maynard. The survey reflects both easements.

Out of the forty-five-acre tract, MWI conveyed a 3.168-acre tract of land to Kenneth Mendoza, who conveyed the property to another. Eventually, Shirley Ausherman held title to the property and she conveyed her interest in the 3.168-acre tract (Lot 6 as depicted on inserted survey) to Barnett in November 2010, along with her interest in an adjoining .518-acre tract of land. Barnett testified that Ausherman never communicated to him that she thought the easement burdening the property was a forty-foot easement.

Private Road 8395 is about twelve feet wide. It is a slag road. The western boundary of Barnett's property runs to the center of the roadway; Havard's father owns the property from the center of the road on the opposite side. In the MWI Land Survey, the private road is located between lots 6 and 7 and identified only as "Existing Road[.]"



Havard testified that over the years he and his family have repaired the road probably two or three dozen times with slag. Havard testified that he does not have any trouble gaining ingress to and egress out of the property. He also testified that he did not think emergency personnel would have problems getting to his home using Private Road 8395.

Havard testified that for as long as he could remember, he and his family have maintained and mowed both sides of the road up to a distance of thirty-four feet from the center of the private road. During his testimony, Havard read his

4

statement into the record. In his statement, he indicated that the road has sloping contours on both sides, which were established, maintained, and mowed for drainage purposes to help move water to the county-maintained ditches. He further stated that the road is maintained in this manner to prevent flooding. He explained, "the 80-foot width was established and maintained so that gentle sloping and drainage could be achieved and maintained with private equipment, rather than continuous ditch dredging[.]" Barnett testified that he has never noticed any flooding problems related to the road. Havard testified that the prior owners of Barnett's property had no objection to Havard mowing the thirty-four-foot section on the side of the private road. Havard testified that an easement, which only gives him nine feet on either side of the road, is not reasonable because it does not permit him to bring heavy equipment in if necessary to maintain the road.

Barnett testified that prior to moving onto the property, he had informed Havard that he did not want Havard to mow in excess of fifteen-feet from the center of the private road. Shortly after purchasing the property, Barnett contended that Havard was trespassing on his property by continuously mowing past Barnett's property line. Barnett testified that he had a survey done by Quin Land Surveying which, according to Barnett, reflected only a thirty-foot easement, fifteen-feet from the center of Private Road 8395 on each side. Barnett testified

5

that once he had the results from the completed survey, he asked Havard to stop coming onto his property.

Barnett began the process of building a fence around his property, both to prevent Havard from entering his property and to keep some cows on his property. Barnett sought to build a fence that would run parallel to and abutting the easement; however, the fence would not cross the road or limit Havard's access to his property. Havard testified that Barnett was building his fence at the fifteen-foot marker and he believed that Barnett had placed a corner post inside the easement. Barnett testified that Havard used his tractor to knock down the fence post and Havard admitted that he physically removed the post. Havard testified that while removing the post, he remained within fifteen feet of the center of the private road.

In May 2011, Havard filed suit against Barnett seeking a permanent injunction to prevent Barnett from interfering in any way with Havard's exercise of his easement rights. Barnett filed an answer to Havard's lawsuit and filed a counterclaim wherein he sought declaratory judgment, and damages for trespass, assault, false imprisonment, and negligence per se for violating the Criminal Mischief Statute. Defendant also asserted a federal cause of action under 42 U.S.C. § 1983.

6

After a bench trial, the court found the width of the easement granted to Havard's predecessor in title to be thirty feet on either side from the center of the private road.[1] The court further granted Havard the right to mow and maintain the full width of such easement. The court found that Havard was entitled to construct a fence along the eastern boundary of the easement provided Havard constructs the fence within six months of the date of the trial court's judgment. The court then dismissed all other claims Havard had against Barnett, and dismissed all of Barnett's claims against Havard with prejudice. Barnett appealed the trial court's decision.

Barnett did not request, and the trial court did not issue, findings of fact and conclusions of law. In a nonjury trial, when no findings of fact or conclusions of law are requested or issued, all facts necessary to support the trial court's judgment

---

[1] We note that the judgment finds that the width of the easement granted to Havard's predecessor in title is thirty feet on either side of the center of the private road. However, Barnett only owns the eastern side of the private road. The western side of the private road is owned by Havard's father. Havard's father was not made a party to this lawsuit. Neither party argued to the trial court or on appeal that Havard's father was an indispensable party to this litigation and that the trial court lacked jurisdiction in his absence. *See* Tex. R. Civ. P. 39. Furthermore, we note that although "all persons who have or claim any interest that would be affected by the declaration must be made parties" to a declaratory action, those not made a party to the action are not prejudiced by any declaration. Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 2008). Accordingly, the trial court's judgment only affects the rights of the parties to the suit, and the trial court's jurisdiction was not compromised by the absence of any parties. *See id.*

and supported by the evidence are implied. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). However, when the record on appeal contains a full reporter's record, a party may challenge the trial court's implied findings for legal and factual sufficiency under the same standards that govern challenges to a jury's findings. *Id.*; *Whaley v. Cent. Church of Christ of Pearland*, 227 S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2007, no pet.). For the party to prevail on the sufficiency challenge, he must demonstrate that the trial court's judgment cannot be sustained by any theory raised by the evidence. *Whaley*, 227 S.W.3d at 231.

Barnett does not specify in his appellate brief whether he challenges the court's findings for legal or factual sufficiency. With regard to both of his issues, Barnett characterizes the evidence as "undisputed[.]" Accordingly, we construe Barnett's issues as legal sufficiency challenges. *See Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010) (noting that evidence is legally insufficient when it "conclusively establishes the opposite of the vital fact") (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

When a party challenges the legal sufficiency of the evidence, we review the entire record and credit favorable evidence if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See City of*

8

*Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must assume that the factfinder decided questions of credibility or conflicting evidence in favor of the verdict if it reasonably could do so. *Id.* at 819-20. The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then the factfinder must be allowed to do so. *Id.* at 822. We cannot substitute our judgment for that of the trier of fact if the evidence falls within the "zone of reasonable disagreement." *Lee v. Hasson*, 286 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *City of Keller*, 168 S.W.3d at 822). We will sustain a legal-sufficiency challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

## Reasonable Easement

In his first issue, Barnett argues the trial court erred by deciding that the appropriate width of the easement encumbering Barnett's property should be thirty feet on either side of the centerline of the road. Barnett argues the trial court did

not apply the appropriate law in making this determination and disregarded the evidence before it.

An easement is a nonpossessory interest in another's property that authorizes its holder to use that property for a particular purpose. *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). The owner of the dominant estate has a duty to maintain the easement, and the owner of the servient estate has no right to interfere with the dominant estate. *Roberts v. Friendswood Dev. Co.*, 886 S.W.2d 363, 367 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Reyna v. Ayco Dev. Corp.*, 788 S.W.2d 722, 724 (Tex. App.—Austin 1990, writ denied). The owner of the dominant estate must make reasonable use of the right and not unreasonably interfere with property rights of the owner of the servient estate. *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 345 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

When an easement does not state the width of the right-of-way created, the easement holder is entitled to a suitable and convenient way sufficient to afford ingress and egress to the owner of the dominant estate. *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 871 (Tex. App.—Austin 1988, writ denied); *Crawford v. Tenn. Gas Transmission Co.*, 250 S.W.2d 237, 240 (Tex. Civ. App.—Beaumont 1952, writ ref'd). The suitable width depends on the purpose of

the easement. If the easement merely states the object for which the easement is granted, then we will infer those dimensions that are reasonably sufficient for that purpose. *Crawford*, 250 S.W.2d at 240.

> No interest in real property passes by implication as incidental to a grant except what is reasonably necessary to its fair enjoyment. A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner.

*Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974). Therefore, every easement holder has the right to do whatever is reasonably necessary to enjoy fully the rights granted in the easement. *Roberts*, 886 S.W.2d at 367. However, to determine the scope of an easement we may only imply "'those rights reasonably necessary to the fair enjoyment of the easement with as little burden as possible to the servient owner.'" *Whaley*, 227 S.W.3d at 231 (quoting *Lakeside Launches,* 750 S.W.2d at 871). "As a general rule, the questions of whether the use of an easement by the dominant estate is reasonably necessary and convenient and of whether the use is as little burdensome as possible on the servient estate are questions of fact for the trial court or jury." *Reaves v. Lindsay*, 326 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Here, the grant expressly provides "the free and uninterrupted use, liberty and privilege of the passage in, along, upon and across the existing right-of-way[.]"

11

It further expressly notes the purpose of the easement is to provide the easement holder with "the perpetual right of passage[.]" It is undisputed that the easement has remained unaltered and that the original grant is currently in effect. It is also undisputed that the recorded easement document does not expressly indicate the width of the easement. While the easement makes no mention of any other rights of the user, we may imply that Havard's use of the easement to maintain the easement and prevent its flooding is reasonably necessary for Havard's reasonable use of the easement. *See Coleman*, 514 S.W.2d at 903.

Havard contends that he has "the right of passage over the reasonable portion of the servient estate, with consideration for sloped contours to be maintained in order to provide for drainage to prevent flooding of the road." He argues that the easement must be wide enough "to control drainage and prevent flooding which would result in not being able to use the road."

Maintaining and repairing the road is Havard's duty as the owner of the dominant estate and providing for a means to prevent flooding may be reasonably necessary to fulfill the purposes of the easement—the free and uninterrupted passage to Havard's property. *See Roberts,* 886 S.W.2d at 367; *see also Whaley*, 227 S.W.3d at 231-32. On appeal, Barnett argues, "an easement of fifteen feet on either side of the centerline (thirty feet total) would clearly be sufficient to achieve

12

the stated purpose of the conveyance." However, Havard testified at trial that he could not maintain the road with only nine feet on either side of the twelve-foot road because he would be unable to get heavy equipment into the area. Havard also explained that he and his family use the thirty-four feet of property on both sides of the road to create gentle sloping contours for drainage of the road. He explained that this method of drainage allowed them to maintain the road with private equipment, rather than continuous ditch dredging. While Barnett testified that he has not noticed flooding of the road, the trial court could have reasonably concluded that the road has not flooded because of the sloping contours maintained by Havard. *See City of Keller*, 168 S.W.3d at 819-20. Moreover, there is no evidence in this record that an alternative form of effective drainage for the road would be less burdensome to the servient estate. Considered in a light most favorable to the judgment, we conclude that reasonable and fair-minded people could determine that the sixty-foot easement was proper. *See id*. at 827. We hold that the evidence is legally sufficient to support the trial court's judgment that the width of the easement should be thirty feet on either side of the center of the private road designated as Private Road 8395, and therefore affirm that part of the trial court's judgment.

13

The trial court also granted Havard the right to construct a fence along the eastern boundary of the easement. Under the easement, while Havard is entitled to use the road, he is not entitled to fence the road or exclude Barnett from access to the road. Barnett is entitled to access his entire tract of land. Havard must make reasonable use of his easement right and he must not unreasonably interfere with Barnett's property rights. *See San Jacinto Sand Co.*, 426 S.W.2d at 345. We expect Barnett and Havard "'to exercise their respective rights and privileges in a spirit of mutual accommodation.'" *See Baer v. Dallas Theater Ctr.*, 330 S.W.2d 214, 219 (Tex. Civ. App.—Waco 1959, writ ref'd n.r.e.) (quoting Restatement, Property—Servitudes, Sec. 485, p. 3026.). Therefore, we reverse and strike that portion of the trial court's judgment finding that Havard has a right to install a fence along the western boundary of the easement on Barnett's property.

### Trespass Claim

In his second issue, Barnett complains that the trial court erred in not ruling in his favor on his trespass claim because Havard failed to offer a defense and the evidence was undisputed that Havard trespassed on Barnett's property. Trespass to real property is defined as the unauthorized entry upon the land of another. *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011). While a property owner has a right to exclude others from his property, the property owner may choose to relinquish a

14

portion of the right to exclude by granting an easement. *See Marcus Cable*, 90 S.W.3d at 700. For a plaintiff to recover damages for trespass to real property, he must prove "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). The plaintiff must prove that the defendant exceeded the bounds of any legal rights he may have possessed. *Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 497 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Havard contends that he had consent to enter Barnett's property. Consent is an affirmative defense to a cause of action for trespass. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 835 (Tex. App.—Dallas 2000, no pet.). Havard did not expressly plead consent as a defense. As a general rule, a judgment must be supported by the pleadings and proof at trial. *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). To determine whether a judgment conforms to the pleadings, we review the pleadings as a whole. *Raymond v. Raymond*, 190 S.W.3d 77, 83 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been raised in the pleadings." Tex. R. Civ. P. 67. To

15

determine whether an issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 879 (Tex. App.—Houston [14th Dist.] 2009, no pet.). After examining the record as a whole, we find ample evidence that the issue of consent was tried below. Therefore, we conclude the issue of consent is properly before this Court on appeal.

Consent to enter property may be implied if the owner has actual knowledge that people have been entering the land and fails to take reasonable steps to prevent or discourage those persons from entering the land. *Gen. Mills Rests.*, 12 S.W.3d at 835. Consent to enter property may also be based on an express easement. *See Marcus Cable*, 90 S.W.3d at 700; *see also Koelsch*, 132 S.W.3d at 498 (finding no liability for trespass when defendant's use of property fell within rights conveyed by easement). There is no dispute that Havard entered Barnett's property. Accordingly, liability for trespass is dependent on whether Havard's entry was with consent.

Barnett complains that Havard trespassed each time he travelled past fifteen feet from the centerline of the private road. However, as discussed above, the trial court found the easement to be thirty feet from the centerline on each side of the private road. Havard's easement entitles him, and, in fact, requires him to maintain

16

the easement. Because Havard's entry onto the property was for purposes authorized by the easement and within the boundaries of the easement as found by the trial court, Barnett cannot prevail on his trespass claim for this entry.

Barnett argues that the evidence showed that Havard did not just trespass on the portion of property at issue in the easement. He complains that Havard trespassed on his property by mowing the easement owned by GSU along the northern boundary of Barnett's property. At trial, Havard admitted that he mowed the easement owned by GSU. He also admitted that he did not have an interest or right in the easement owned by GSU. He admitted that he had no express authority to mow the easement and had never asked GSU for permission to mow the area. He testified that he and his family have mowed that portion of the property for years. He explained that the prior owners did not object to his family mowing the property. He testified that when Barnett indicated he had an issue with him mowing the property, he stopped.

Havard essentially argues that he was justified in entering the property to mow the GSU easement because the prior owners had consented to his entry onto the property. Viewing the evidence in a light most favorable to the verdict, we hold that the trial judge could have reasonably found that the prior owners of the property had impliedly consented to Havard's entry onto the property and that

17

when Barnett revoked that consent, Havard stopped entering the property. We conclude the evidence is legally sufficient to support the trial court's judgment dismissing Barnett's cause of action for trespass.[2] We overrule Barnett's second issue to the extent it concerns his trespass cause of action.

## Negligence Per Se Claim

In his second issue, Barnett also argues that he is entitled to a new trial because the trial court failed to rule in his favor on his negligence per se claim when Havard admitted to destroying Barnett's fence post and knew that destroying the post was a violation of the Penal Code. Barnett's negligence per se claim is based on his allegation that Barnett violated the criminal mischief statute, which provides in relevant part:

> (a) A person commits an offense if, without the effective consent of the owner:
>
>    (1) he intentionally or knowingly damages or destroys the tangible property of the owner;
>
>    (2) he intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person; or
>
>    (3) he intentionally or knowingly makes markings, including inscriptions, slogans, drawings, or paintings, on the tangible property of the owner.

Tex. Penal Code Ann. § 28.03(a) (West 2011).

---

[2] The trial court's judgment, dismissing Barnett's claims with prejudice, will not bar claims for damages proximately caused by future acts of trespass. *See generally Mossler v. Shields*, 818 S.W.2d 752, 753 (Tex. 1991).

"Negligence per se is a tort concept whereby the civil courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person." *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978). "Where the Legislature has declared that a particular act shall not be done, it fixes a standard of reasonable care, and an unexcused violation of the statute constitutes negligence or contributory negligence as a matter of law." *Mo. Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex. 1977). We recognize that while all persons have a duty to obey the criminal law, not all criminal statutes provide a standard for civil liability. *See Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). Texas courts will only impose civil liability based on a criminal statute when the statute provides an appropriate basis for doing so. *See Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998).

Assuming, without deciding, that a violation of the criminal mischief statute triggers liability in tort, we find legally sufficient evidence to support the trial court's dismissal of Barnett's cause of action for negligence per se. In certain circumstances, the courts have found that an easement owner may protect his easement rights by self-help. For example, an easement owner may remove obstacles that interfere with the exercise of his easement privileges. *See Stuart v. Larrabee*, 14 S.W.2d 316, 320 (Tex. Civ. App.—Beaumont 1929, writ ref'd). In

19

*Stuart*, the court found that the appellee was not liable for damages for cutting and removing gates and two trees that had prevented him from using a road that he had an easement right to use. *Id.* In so acting, the easement owner was acting to abate a nuisance which interfered with his privilege of use. *Id.*

Barnett contends that Havard admitted to destroying Barnett's fence post with his tractor. At trial, Havard testified that he believed the fence post was placed inside the easement, and he removed the post from the ground because he believed it interfered with his easement privileges. Barnett testified that Havard did not destroy the post, but simply pulled it out of the ground and left it on the ground. There is no evidence in the record that in removing the post Havard did other injury to Barnett's property. The evidence suggests that the post was located approximately fifteen feet from the center of the private road, an area that is within the width of the easement as determined by the trial court.

Viewing the evidence in a light most favorable to the verdict, the trial judge could reasonably have concluded Havard had a right under the easement to remove the post to abate the nuisance. We hold that the evidence is legally sufficient to support the trial court's judgment dismissing Barnett's cause of action for negligence per se. We overrule Barnett's second issue.

20

We affirm the trial court's judgment to the extent that the trial court determined it was reasonable and necessary for the width of the easement to extend thirty feet from the center of the private road to enable Havard to fully enjoy the right of passage over Private Road 8395. However, we reverse the trial court's judgment that Havard had a right to construct a fence along the eastern boundary of the easement and strike such language from the judgment. We affirm the trial court's judgment dismissing all other claims of Havard and Barnett.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

_____
CHARLES KREGER
Justice

Submitted on December 5, 2013
Opinion Delivered June 12, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.

21