FILED

05/21/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2018

**STATE OF TENNESSEE v. MORGAN NYLE JANYJA**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-958     Monte Watkins, Judge**

_____

**No. M2017-01835-CCA-R3-CD**

_____

The Defendant, Morgan Nyle Janyja, appeals the trial court's revocation of his probation. On appeal, he argues that the evidence was insufficient to support the revocation. After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

David Von Wiegandt, Nashville, Tennessee, for the appellant, Morgan Nyle Janyja.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Glenn Funk, District Attorney General; and Jeffrey A. George, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

On July 17, 2014, the Defendant pleaded guilty to two counts of attempted aggravated sexual exploitation of a minor and one count of attempted sexual exploitation of a minor, and he received concurrent sentences of six years' probation for each conviction. He was placed on sex offender probation and was required to register with the sex offender registry. His probation was revoked multiple times, and he was required to serve some jail time as a result. On June 16, 2017, the Defendant entered a best interest guilty plea to attempted violation of the sex offender registry, second offense. On

June 19, 2017, a probation violation warrant was issued, which is the subject of this appeal, for (1) a violation of the sex offender registry, second offense, (2) having a balance of $2,667 of probation fees in arrears, and (3) being arrested for a violation of the sex offender registry. On August 11 and August 16, 2017, a hearing was held on the probation violation.

At the hearing, Mr. Ahmed Sayid testified that the Defendant was working part-time in Mr. Sayid's coffee shop prior to his arrest. Starting at the end of February, the Defendant slept on an air mattress in the office space connected to the coffee shop. Mr. Sayid stated that probation officers came once a month to check on the Defendant. Mr. Sayid did not like that the officers were coming to the shop, so sometime between the middle and the end of May, he told the Defendant to find somewhere else to sleep. The Defendant did not have anywhere to stay, so he occasionally slept outside the coffee shop. Mr. Sayid stated that he and his family worked long hours at the coffee shop, and that sometimes the Defendant would stay at the shop to talk to them or work until 2:00 or 3:00 a.m. When asked if the Defendant slept at the coffee shop after these late nights, Mr. Sayid stated, "Sometimes he would be there until it closed, or — p.m., a.m., and he would be there." On cross examination, Mr. Sayid clarified that the Defendant stopped living in the coffee shop in the middle of May. He did not know where the Defendant lived from May 20 through May 31, 2017.

The Defendant testified that he only entered a best interest guilty plea to the violation of the sex offender registry because he could not afford bond and wanted out of jail as soon as possible. He explained that when Mr. Sayid told him he could not stay at the coffee shop any longer, he told Mr. Sayid that he wanted to start working the night shift. He also stated that he would stay at the coffee shop until 2:00 a.m. to spend time with Mr. Sayid and Mr. Sayid's brother. He would then leave the coffee shop and sleep in his car. He stated that he never slept in his car in the same location two days in a row so that he did not establish a residence. When he was staying at the coffee shop, probation officers would visit. Starting in the middle of May, he had no place to stay.

The Defendant stated that he was active in his children's lives. He wanted to get back to work and had a job waiting for him. He stated that he did not use drugs and did not break the law.

On cross examination, the Defendant denied residing at the coffee shop from May 20 through May 31, 2017. He claimed he was sleeping in his car at different locations. He would go to the coffee shop before his shift began to "hang out with some of the guys" who were regularly there. He would also go to the coffee shop for lunch "if money was tight." When asked if he ever spoke with Officer Christine Benge, he stated the name "doesn't ring a bell."

Officer Christine Benge, the Defendant's probation officer at the time, testified on behalf of the State. She took the case over from Officer Laurence Caldwell at the beginning of June 2017. The Defendant's registered primary and secondary addresses at that time were listed as "homeless." She testified that based on the records from the Defendant's GPS ankle monitor, she sought a probation violation warrant for both a violation of the sex offender registry and for being in arrears on his probation fees. The GPS records were introduced into evidence and reflected that the Defendant was at the coffee shop overnight on the following dates and times: from 9:16 p.m. on May 20 until 8:34 a.m. on May 21; from 4:32 p.m. on May 21 until 2:04 a.m. on May 22; from 11:08 p.m. on May 22 until 8:51 a.m. on May 23; from 6:19 p.m. on May 23 until 8:55 a.m. on May 24; from 5:21 p.m. on May 25 until 6:30 a.m. on May 26; from 3:55 a.m. until 10:25 a.m. on May 27; from 11:59 p.m. on May 29 until 8:37 a.m. on May 30; from 2:34 a.m. until 10:05 a.m. on May 31; and from 3:39 a.m. until 9:08 a.m. on June 1.

On cross examination, Officer Benge explained that at the time of the hearing, the Defendant's primary address was listed as a detention center. She stated that her records reflected this change occurred on June 9, 2017, after the Defendant was arrested. She noted that the Defendant changed his secondary address to "homeless" on October 17, 2016, but her records did not reflect when his primary address was changed to "homeless." She acknowledged that before speaking with the district attorney's office, she did not know the Defendant was asked to move out of the coffee shop. She stated that she knew he had been working at the coffee shop prior to his arrest, but she did not know his "exact work schedule." She acknowledged she did not personally call the Defendant's employer or visit the coffee shop. She agreed that she had never spoken with the Defendant.

The Defendant was recalled to testify by the defense. He stated that sometimes he would be at the coffee shop until 6:00, 8:00, or 10:00 a.m. because he worked the overnight shift. He explained that his previous probation officer was aware that he resided there and that his previous probation officer visited the coffee shop on more than one occasion. Prior to the middle of May 2017, the Defendant worked earlier hours, but after the middle of May, he worked the overnight shift and slept in the afternoons. He stated that he reported his homeless status to Officer Caldwell and that even before Officer Caldwell was his assigned probation officer, at least two home inspections were conducted at the coffee shop in the beginning of March 2017. He did not know his probation officer had changed to Officer Benge and had never met her.

On cross examination, the Defendant stated that he reported his coffee shop address to Officer Caldwell at the beginning of March 2017. He changed his status to homeless in the middle of May. When asked why the records did not reflect his change of address to the coffee shop but did reflect his change of address to the detention center,

he explained, "Those are updated by a police officer, whenever I [am] arrested; or, by probation, my probation officer, whenever I report to my probation…. That is out of my hands." He acknowledged that his previous testimony was that he worked from 7:00 p.m. until 2:00 a.m. and that sometimes he would stay until 4:00 a.m. He further stated that his shift began "regularly, normally" around 7:00 p.m. and ends around 2:00 a.m. The coffee shop also opened for preparation around 4:00 a.m. He explained that these were the average working hours for him, but his schedule could differ.

The trial court, in finding that the Defendant violated the terms of his probation, stated that "what this boils down to is, he was staying at the coffee shop and saying that he was homeless." The Defendant was sentenced to serve thirty days, consecutive to his sixty-day sentence for his guilty-pleaded conviction for violation of the sex offender registry, followed by the reinstatement of probation. The Defendant now appeals.

## ANALYSIS

On appeal, the Defendant argues that the evidence presented was insufficient to support the revocation of his probation. We review the revocation of probation for abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). To find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id.* The trial court has the right to revoke a defendant's probation when it finds by a preponderance of the evidence that the defendant has violated the conditions of probation. T.C.A. § 40-35-311(e)(1). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 750 S.W.2d 872, 875 (Tenn. Crim. App. 1978). The trial court's "findings have the weight of a jury verdict." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

The Defendant argues that the testimony of Mr. Sayid and the Defendant should be given more weight than the testimony of Officer Benge because Officer Benge did not have any personal knowledge as to the Defendant's location on the dates in question, did not have his work schedule, and did not contact the Defendant's employer or the Defendant himself. The Defendant notes that there was no reason presented as to why Mr. Sayid would lie about the Defendant's living arrangements. He also argues that the GPS records were consistent with the Defendant's testimony that he would work the night shift, would be at the coffee shop outside of his work hours to eat and hang out with his friends, and would sleep in his car at various locations in the afternoons.

- 4 -

We initially note the Defendant's argument that the testimony of Mr. Sayid and the Defendant is presumed truthful unless they are impeached or other testimony diminishes their credibility. The Defendant cites two cases, *Lundy v. State*, 752 S.W.2d 98 (Tenn. Crim. App. 1987), and *State v. Glebock*, 616 S.W.2d 897 (Tenn. Crim. App. 1981), for this contention. However, these cases concerned constitutional challenges to jury instructions that sworn witnesses are presumed truthful and are irrelevant to the issue in this case. *See Lundy*, 752 S.W.2d at 103; *Glebock*, 616 S.W.2d at 906. In the context of probation revocation cases, our supreme court has held that credibility determinations are made by the trial court. *Bledsoe v. State*, 387 S.W.2d 811 (Tenn. 1965) ("[T]he trial judge was in much better position than we are to judge the weight and value of the testimony."); *see also Delp*, 614 S.W.2d at 398; *Carver*, 750 S.W.2d at 875.

We also note the State's contention the trial court did not abuse its discretion because the Defendant was behind in payment of his probation fees and because he entered a guilty plea to the attempted violation of the sex offender registry. The trial court, in revoking the Defendant's probation, specifically found that the Defendant was living at the coffee shop while his address was still listed as "homeless" on the sex offender registry. We will thus consider the evidence adduced at the hearing as it pertains to this ground.

The GPS records show that the Defendant was staying at the coffee shop overnight between the dates of May 20 through May 31, 2017. Officer Benge testified that the Defendant's primary and secondary addresses on the sex offender registry were listed as "homeless" during those dates. According to the Defendant, his normal work shift at that time was from 7:00 p.m. until 2:00 a.m. Even accounting for these hours, the GPS records still reflect that he remained at the coffee house during overnight hours when he was not scheduled to work. The Defendant explained that he would be at the coffee house for reasons other than work and that sometimes his work schedule would vary. Mr. Sayid testified that the Defendant slept on an air mattress in the shop, but he told the Defendant to stay somewhere else starting in the middle of May. The trial court makes witness credibility determinations and was not required to accept the testimony of Mr. Sayid or the Defendant as true. Because the GPS records do reflect that the Defendant was staying overnight at the coffee shop while his address was listed as "homeless," we determine that the trial court did not abuse its discretion in concluding the Defendant had violated the terms of his probation. Based on the foregoing, the Defendant is not entitled to relief, and we affirm the decision of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

- 5 -