# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00422-CV

**Appellant, Uptown Cars, Inc. //
Cross-Appellants, Newcastle Management Trust and Jerry Landers**

**v.**

**Appellees, Newcastle Management Trust and Jerry Landers //
Cross-Appellee, Uptown Cars, Inc.**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-000432, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Easement rights to access Lake Travis—specifically, whether an express easement allows non-waterfront property to build a road and boat dock on adjacent lakefront properties and whether the non-waterfront property has prescriptive-easement rights to maintain a boat dock—are at issue in this case. The non-waterfront property owner, Uptown Cars, Inc., sued its neighbors, Newcastle Management Trust and Jerry Landers (together, Neighbors), to resolve the dispute. On the parties' cross-motions, the trial court rendered final summary judgment determining that Uptown does not have the right to build and maintain a road or boat dock on Neighbors' properties but does have rights to traverse their properties to access the lake and to recreate on the shore. For the following reasons, we affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings.

**BACKGROUND**

The undisputed evidence establishes that Uptown owns fee title to an approximately 1.577-acre tract of land (the Property) terminating at its east boundary at the 670-foot contour on the shores of Lake Travis.[1] Newcastle and Landers own the surrounding tracts, which each extend eastward from the 670-foot contour to the centerline of the lake. Below is an undated photograph depicting the Property (within the red outline) and the adjoining tracts. The photograph depicts a time when the lake level was higher than it is currently, making it appear that the Property has direct lake access, but it does not. The purple outline depicts the original area burdened by an express easement area and specified by metes and bounds in the express easement, although the easement extends on the east all the way to the shoreline of the lake, wherever it may be.

---

[1] Lake Travis is a flood-control lake with widely varying surface levels; accordingly, the shoreline of Lake Travis moves as the surface level of the lake changes. *Sierra Assoc. Grp. v. Hardeman*, No. 03-08-00324-CV, 2009 WL 416465, at *1 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.). The 670-foot contour is a line that is 670 feet above mean sea level. *Capitol Rod & Gun Club v. Lower Colo. River Auth.*, 622 S.W.2d 887, 889 (Tex. App.—Austin 1981, writ ref'd n.r.e.).



EXHIBIT B-3

Uptown acquired the Property from the Zieschangs in 2015, who acquired 1.07 acres of it (Tract 1) in 1972 and the remaining .49-acre portion in 1997 from its then-owner, Volente Group of Texas, Ltd., after it was discovered that the Zieschangs had inadvertently built their house beyond their property line. Tract 1 includes an easement on the properties to the north, south, and east of the Property, which are now owned by Neighbors. The easement was first granted in a 1956 deed from the original owner of all the properties involved in this dispute and has been conveyed through official title records to all subsequent owners. The easement's text is reprinted infra in the Discussion section. The easement's text identifies an area

3

(designated as the "water front"), lying between Tract 1 and the shoreline of the lake and belonging to the servient estate (now owned by Neighbors), on which the dominant estate (now belonging to Uptown) has certain rights.[2] The parties' dispute concerns the scope and continued existence of such rights, but there is no dispute that Uptown's chain of title includes the easement as conveyed in the 1956 deed.

In its original petition, Uptown petitioned the court "to establish a prescriptive easement on real properties owned by" Neighbors, alleging that it had recently purchased the Property from the Zieschangs. Uptown alleged that its "predecessors in interest [the Zieschangs] used the Newcastle/Landers properties in a manner that was open, notorious, continuous, exclusive, and adverse beginning no later than 1972 for purposes of maintaining, using and accessing a boat dock and accessing Lake Travis." Therefore, Uptown contended, it is "entitled to a prescriptive easement across the Newcastle/Landers properties for various purposes as have been enjoyed in the past," which purposes include "the ability to construct, anchor and maintain a boat dock, access to the boat dock from [Uptown's] property . . . and other recreational purposes such as (without limitation) swimming, sports, lounging and fishing."

Neighbors filed an original joint counterclaim for trespass and seeking a permanent injunction enjoining future trespass, alleging that Uptown had entered their properties and "attempted to construct and maintain a boat dock" without their consent. In supplemental counterclaims, Newcastle and Landers each pleaded for declaratory relief under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, seeking "determinations with respect to questions concerning the current viability and/or interpretation of

---

[2] The land benefiting from an easement is called the dominant estate; the land burdened by an easement is called the servient estate. *Easement*, *Black's Law Dictionary* (11th ed. 2019).

4

the access easement." Neighbors pleaded that the easement "merged with the dominant estate and no longer exists" by virtue of the Zieschangs' acquisition of the approximate .49-acre portion, which "wholly encompassed the servient tract on which the easement existed" and "extinguished" the easement. Alternatively, they pleaded for a declaration concerning the "true boundaries of the access easement and an interpretation of its limited purpose."

Uptown filed a motion for partial summary judgment, arguing that there is no genuine issue as to any material fact necessary to establish as a matter of law that it has an express easement across Neighbors' properties "for access to Lake Travis by horse, foot or vehicle, including automobile and boat." Uptown argued that its express easement "necessarily includes the right to construct and maintain a road that would allow a vehicle to travel across [Neighbors]' land in a reasonably safe manner (which requires construction of a road)" and to "make recreational use of the lake, including . . . launching a boat and remaining at the edge of the lake . . . for the purpose of swimming, wading and other recreational uses reasonably associated with use of Lake Travis." Neighbors filed traditional and no-evidence motions for summary judgment arguing that (1) the express easement on which Uptown relies was extinguished in 1997 or, if it still exists, does not authorize construction of a road as a matter of law; (2) Uptown's prescriptive-easement claim fails because the evidence conclusively proves that its title predecessors had "no intent to appropriate the right" to maintain a boat dock on their respective properties; and (3) there is no evidence of any of the required elements of Uptown's prescriptive-easement claim.

In its second amended (live) petition, Uptown alleges that it is "entitled to judgment" establishing that it has an express easement over Neighbors' properties, including the right to maintain a boat dock, to construct and maintain a road to allow lake access, and to do all

5

things "reasonably associated with recreational use of Lake Travis" for itself and its guests and invitees. In the alternative, it alleges that it is entitled to a judgment establishing that it has a prescriptive easement allowing use of Neighbors' properties "for the purpose of maintaining a boat dock, and the right to do all things reasonably associated with recreational use of a boat dock on the lake."

The trial court signed an order on the parties' cross-motions for summary judgment that granted in part and denied in part each of the motions.[3] The order specified that (1) an express easement (Easement) exists providing the owner of the dominant estate (currently, Uptown) "access to the water front, even though it may vary with the rise and fall of the river and lake"; (2) the Easement provides for ingress and egress to the waterfront "whither on foot, horseback or in vehicles of every kind" and to "recreational use of Lake Travis at the shoreline" including "the right to remain at the edge of and in the lake on Defendants' property" but does not provide "the right to construct a road, boat ramp, or boat dock"; (3) the Easement was not extinguished through the doctrine of merger; and (4) there is no evidence creating a genuine issue of material fact on the essential elements of Uptown's prescriptive-easement claim. In a later order, the trial court awarded each Neighbor approximately forty percent of their respective requested attorney's fees plus conditional appellate attorney's fees, which rendered the summary-judgment order final and appealable. Uptown filed a notice of appeal, and Neighbors each filed notices of cross-appeal.

---

[3] The trial court signed a later Amended Order on Cross Motions for Summary Judgment, on Landers's and Newcastle's motions to modify. The amended order is the operative order for purposes of this appeal and the order from which we cite the court's findings and conclusions.

**DISCUSSION**

The standards for summary judgment are well-established, *see* Tex. R. Civ. P. 166a(c), (i), and we review de novo the trial court's summary-judgment ruling, *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When an easement is unambiguous, we construe it as a matter of law. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 703 (Tex. 2002). On appeal, Uptown challenges the trial court's delineation of the Easement's scope, ruling on Uptown's prescriptive-easement claim, and awards of attorney's fees. On cross-appeal, each Neighbor challenges the amount of attorney's fees that the trial court awarded it, and Newcastle additionally challenges the trial court's ruling on its extinguishment claim.

*Uptown's issues*

In three issues, Uptown argues that the trial court erred in (1) limiting the scope of the Easement by determining that it does not include the right to build and maintain a road, boat ramp, or boat dock on Neighbors' properties; (2) granting Neighbors summary judgment on its prescriptive-easement claim; and (3) awarding Neighbors attorney's fees in the absence of evidence that the fees were reasonable and necessary and when such awards were not equitable and just.

<u>Whether the trial court properly limited the scope of the Easement</u>

An easement confers upon one person the right to use the land of another for a specific purpose, but it does not convey the property itself. *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 870–71 (Tex. App.—Austin 1988, writ denied) (determining that phrase "easement and right-of-way" granted right of passage over and across all land lying

7

between specified 670-foot contour line and waters of Lake Travis). Put another way, an easement is a non-possessory interest in land that authorizes its holder to use the property for only particular purposes. *Marcus Cable Assocs.*, 90 S.W.3d at 700. We apply basic principles of contract construction when considering an express easement's terms. *Id.* The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest. *Id.* at 700–01.

We generally construe language within a contract according to its "plain, ordinary, and generally accepted meaning." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 742-43 (Tex. 2020). When construing a contract, we must, if possible, give effect to all the contract's terms so that none will be rendered meaningless, and we must read all of the provisions together so as to give each provision its intended effect. *See Kelley-Coppedge, Inc. v. Highlands Ins.*, 980 S.W.2d 462, 464 (Tex. 1998); *Forbau v. Aetna Life Ins.*, 876 S.W.2d 132, 133 (Tex. 1994). We must be particularly wary of isolating individual words, phrases, or clauses and of reading them out of the context of the document as a whole. *State Farm Life Ins. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). For example, courts should presume that words that follow one another are not intended to be redundant. *See Gulf Metals Indus., Inc. v. Chicago Ins.*, 993 S.W.2d 800, 805 (Tex. App.—Austin 1999, pet. denied).

An easement's express terms, construed according to their generally accepted meaning, delineate the purposes for which the easement holder may use the property, and nothing passes by implication except what is "reasonably necessary" to fairly enjoy the rights expressly granted. *Marcus Cable Assocs.*, 90 S.W.3d at 701; *see Lakeside Launches*, 750 S.W.2d at 871 ("In determining the scope of an easement, we may imply only those rights that are reasonably necessary to the fair enjoyment of the easement with as little burden as

8

possible to the servient owner.").  Thus, if an easement expressly delineates the purposes for

which the holder may use the property, a use pursuing a different, non-delineated purpose is not

allowed.  *See Marcus Cable Assocs.*, 90 S.W.3d at 701; *see also Davis v. Johnston*, No. 03-10-

00712-CV, 2012 WL 2499472, at *16 (Tex. App.—Austin June 28, 2012, no pet.) (mem. op.)

(collecting cases holding that "ingress and egress" to lake does not grant right to use waterfront

land for general recreational purposes or to exercise waterfront privileges such as mooring boats

and tethering boat docks).  Applying these principles and the rules of contract construction, we

consider the Easement's express terms.

After first conveying fee title to Tract 1, the relevant and undisputed deeds in

Uptown's chain of title additionally convey to Uptown, as grantee,

> *an easement over, upon and across all land* owned or controlled by [grantor]
> *lying between* the above described land [*Tract 1*] *and the Colorado River or the*
> *shore line of [Lake Travis] as it is now or may be hereafter established*, being
> described by metes and bounds as follows:
>
> BEGINNING at the Northeast corner of Tract 1 for the Northwest corner of this
> tract;
>
> THENCE North 60 deg. 10' E. 138.6 feet to an iron stake at the water's edge of
> Lake [Travis] for the Northeast corner of this tract;
>
> THENCE with the water's edge of Lake [Travis] South 120 deg. E. 100.0 feet to a
> point on the water's edge for the Southeast corner of this tract;
>
> THENCE South 81 deg. 31' W. 163.4 feet to an iron stake in a rock mound on the
> 715 foot contour and at the Southeast corner of Tract 1 for the Southwest corner
> of this tract;
>
> THENCE with the 715 foot contour and the East boundary of Tract 1, North 12
> deg. 11' E. 55.1 feet to an iron stake in a rock mound and North 11 deg. 20' W.
> 44.9 feet to the PLACE OF BEGINNING, and containing 0.33 acres of land,
> more or less;
>
> And as the said water front may hereafter vary with the rise and fall of said river
> and lake, provided, however, that as the shore line fluctuates with the rise and fall

9

of the water *the portion of the water front controlled by the grantee herein shall be in the proportion which the frontage hereby conveyed bears to the total frontage on the lake of the land controlled by grantor lying on each side of the land hereby conveyed*, and *the grantee* herein, his heirs and assigns, *shall have the free and uninterrupted use and liberty and privilege and easement of passing over and upon said land*, *together with free ingress to and egress from said river or lake whether on foot or on horseback or in vehicles of every kind*; provided, further, that the easement hereby granted is subject to all easements heretofore granted to Lower Colorado River Authority and to any other person upon and over said land.

(Emphases added.)  Notably, the Easement does not expressly designate that use may be made of the servient estate for the purpose of maintaining boat docks, boat ramps, or roads.  Instead, and relevant to the parties' dispute, the Easement does four significant things:

- It specifies the geographical boundaries of the servient estate subject to the easement (to which we refer herein as the Easement Area);

- it quantifies the portion of the Easement Area that is "controlled by the grantee" (to which we refer herein as the Recreation Area);

- it grants to the dominant estate broad rights to "pass over and upon" the Recreation Area; and

- it grants to the dominant estate rights of ingress to and egress from the lake.

We will discuss each item in turn.

Firstly, the Easement specifies that the Easement Area is essentially a rectangle bounded on the west by the 715-foot contour (the eastern boundary of Tract 1), on the east by the varying shoreline (i.e., "water's edge") of Lake Travis ("as it is now [in 1956] or may be hereafter established"), and on the north and south as described in the metes-and-bounds description and extending beyond the specified markers in a straight line to the shoreline (but not beyond) when the lake recedes below its height at the time of the 1956 deed.

10

Secondly, the Easement acknowledges that because "the said water front" will vary and the "shore line" will fluctuate, "the portion of the water front controlled by the grantee" (the Recreation Area) will be a variable area rather than a fixed one. The Recreation Area equals "the proportion which the frontage hereby conveyed bears to the total frontage on the lake of the land controlled by the grantor lying on each side of the land conveyed." Neither party takes issue with the trial court's failure to make a finding on the length of the waterfront or attendant size of the Recreation Area, and we therefore do not further address this aspect of the Easement.[4]

Thirdly, later in the same sentence—after quantifying the Recreation Area to be "controlled by the grantee"—the Easement outlines the extent of such "control." It specifies that the grantee "shall have the free and uninterrupted use and liberty and privilege and easement of passing over and upon said land," with "said land" necessarily referring to the Recreation Area. While the phrase employs two expansive adjectives—free and uninterrupted—and three expansive nouns—use, liberty, and privilege—all of those terms, collectively, modify the phrase "passing over and upon said land," indicated by the single appearance of the preposition "of." The relevant, common meaning of the word "pass," as used here—i.e., "over and upon said land"—means to "move, proceed, [or] go." *See* Merriam-Webster Dictionary, *https://www.merriam-webster.com/dictionary/pass* (last visited March 19, 2024). Thus, these second and third portions of the Easement grant broad rights to the grantee (and its heirs and assigns) of being physically present on (i.e., of moving about and upon) the Recreation Area, always and in the grantee's sole discretion. However, we cannot conclude that the right to be present and move about on the land, as expressed on the face of the Easement, includes the right

---

[4] The trial court's amended summary-judgment order reads, "The parties are not disputing the length of the shoreline for waterfront access. Those details are contained in the easement and, as they are not under dispute, the Court makes no ruling on that issue."

11

to construct a boat dock, boat ramp, or road. *See Marcus Cable Assocs.*, 90 S.W.3d at 701. Being physically present or even lingering and recreating on land cannot reasonably be construed to include activities that would significantly alter the land such as erecting structures and improvements that are affixed to the land.

Moreover, the Easement Area expressly terminates at the shoreline (wherever it may be at any given time) and does not extend eastward of the shoreline. Yet a boat dock—whether tethered to the Easement Area or attached to the submerged lakebed—would necessarily be floating on the water above the lakebed and thus *east* of the shoreline. The same issue arises if this portion of the Easement were construed to allow the construction of a road to the lake because the road would inevitably extend eastward of the Easement Area, at least when the lake level rises. Furthermore, to construe the words "use," "control," "liberty," and "privilege" as granting the right to construct a road and permanently alter the natural landscape—when that express purpose is not delineated—would expand the rights in the Easement to possessory rather than non-possessory rights, which we may not do absent an express intention in the instrument of conveyance. *See id.* (citing Restatement of Property's distinction between easements—which permit owner to use land for only specified purposes—and possessory land interests—which permit owner to make any use of property). We conclude that this portion of the Easement does not convey the right to construct or maintain boat docks, boat ramps, or roads.

Fourthly and finally, the Easement additionally conveys the right of "free ingress to and egress from . . . [the] river or lake whether on foot or on horseback or in vehicles of every kind." The right of ingress and egress is a separate and distinct one from the above-discussed right to pass over and upon the Recreation Area, as evidenced by the fact that it follows the phrase, "together with." Otherwise, the phrase conferring the right of ingress and egress would

12

be redundant, and we are to construe easements so that every provision is given effect and none are rendered meaningless. *See Kelley-Coppedge, Inc.*, 980 S.W.2d at 464. Uptown argues that this delineated purpose of free ingress and egress includes the right to construct a road or boat ramp down to the lake because it is "incidental and necessary" to "reasonably enjoy" the express right of ingress and egress, particularly in "vehicles of every kind" (including boats). *See Lakeside Launches*, 750 S.W.2d at 871 (stating that when rights are not expressly granted, courts may imply only those rights reasonably necessary to fair enjoyment of use or purpose specified in express easement with as little burden as possible to servient owner).

In the context of the Easement, the right of "free" entrance to and exit from the lake, even in vehicles of every kind, reasonably means that the servient estate may not restrict or impede the grantee's comings and goings across the Easement Area to reach the lake. *See* Merriam-Webster Dictionary, *https://www.merriam-webster.com/dictionary/free* (last visited March 19, 2024) (defining "free" as "not obstructed, restricted, or impeded"); *id.*, *https://www.merriam-webster.com/dictionary/ingress* (last visited March 19 , 2024) (defining "ingress" to mean entrance or "the act of entering," or "the right or ability to enter"); *id.*, *https://www.merriam-webster.com/dictionary/enter* (last visited January 22, 2024) (defining "enter" to mean "to come or go into"); *id.*, *https://www.merriam-webster.com/dictionary/egress* (last visited March 19 , 2024) (defining "egress" to mean exit or "the action or right of going or coming out'); *Ingress*, *Black's Law Dictionary* (11th ed. 2019) (defining "ingress" to mean "the right or ability to enter"); *Egress*, *Black's Law Dictionary* (11th ed. 2019) (defining "egress" as "the right or ability to leave"). By specifying that the grantee has a right of "free" ingress to and egress from the lake, "whether on foot or on horseback or in vehicles of every kind," the Easement contemplates that the grantor may not impede the grantee's lake access when the

13

grantee is using one of the enumerated means of travel, *if* the means is capable of passing over the existing terrain. The delineation of permissible travel modes prohibits the grantor from denying the grantee egress and ingress when it is traversing the land via one of those modes.

But there is no express right conveyed in the Easement to construct a road or alter the land to enable lake access by vehicle of any kind. When Texas caselaw has addressed road use, construction, and maintenance rights in the context of ingress-and-egress easements, the easements at issue expressly mentioned roads. *See, e.g.*, *Clearpoint Crossing Prop. Owners Ass'n v. Chambers*, 569 S.W.3d 195, 200 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (construing fifty-foot-wide "road access easement" conveyed "for the purpose of constructing, maintaining, operating, repairing, and removing a road" "in order to provide Grantee" "free and uninterrupted pedestrian and vehicular ingress to and egress from" property); *United Servs. Prof'l Grp. Inc. v. Hurt*, No. 05-14-00108-CV, 2015 WL 8013509, at *6 (Tex. App.—Dallas Dec. 7, 2015, no pet.) (mem. op.) (construing "a 50 foot road easement for egress and ingress"); *Unger v. Landry*, No. 01-03-01331-CV, 2005 WL 21396, at *2–3 (Tex. App.—Houston [1st Dist.] Jan. 6, 2005, pet. denied) (mem. op.) (construing easement "of passing in and along a certain roadway now across a certain tract of land" and providing metes-and-bounds description of easement that was thirty feet in width); *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 428 (Tex. App.—Austin 1998, no pet.) (construing "easement of passing in and along a certain way or road," "together with free ingress, egress and regress"). Unlike in those cases, wherein the easement expressly referenced a "road" and usually provided for specifics such as location and width, here it is unlikely based on the express text that the original grantor both (a) intended the grantee to have a right to build a road (when there is no mention of a road) and (b) further, left the specifics of such a right unmentioned.

14

Limiting the right of ingress and egress to disallow construction of a road, as the trial court did, is consistent with this Court's precedents limiting the scope of easements allowing ingress and egress to a lake, without more, to only that right. *See Harbor Ventures, Inc. v. Dalton*, No. 03-10-00690-CV, 2012 WL 1810205, at *11 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.) (concluding that express easement allowing "ingress and egress" from lake did not contain implied grant to use property for general recreational purposes); *Davis*, 2012 WL 2499472, at *16 (determining that easement granting right of "ingress and egress" to lake did not include rights to maintain boat docks or engage in recreational activities on shore); *Cummins v. Travis Cnty. Water Control & Improvement Dist. No. 17*, 175 S.W.3d 34, 51–52 (Tex. App.—Austin 2005, pet. denied) (determining that easement allowing "free access" to lake water and use thereof "for domestic purposes," as well as right of "ingress and egress" to lake, did not provide right to use servient land for recreational purposes or to build and maintain structures, including boat dock); *Lakeside Launches*, 750 S.W.2d at 869–71 (determining that "an easement and right-of-way" granted only right of ingress and egress but did not convey right to anchor and float commercial boat dock); *Wall v. Lower Colorado River Auth.*, 536 S.W.2d 688, 691 (Tex. App.—Austin 1976, writ ref'd n.r.e.) (determining that easement granting "right of ingress and egress" to "the water's edge" did not grant implied right to use and enjoy lakefront property and build and maintain structures and facilities that are "useful and appropriate for lakefront property," such as trailer houses).

Furthermore, and similar to our determination above as to whether the Easement allows boat docks, the construction and maintenance of a road—even if initially built only on exposed earth to the west of the shoreline—is not reasonably contemplated by the Easement's express reference to ingress and egress because such road, or even just a portion thereof, would

15

inevitably be underwater when the lake level rises and would, thus, encroach *beyond* (i.e., eastward of) the water's edge. The Easement Area expressly extends only to "the shore line of [Lake Travis] as it is now [in 1956] or may be hereafter established," and in no event extends eastward beyond the shoreline. We conclude that the Easement's grant of the right of "free ingress to and egress from" the lake does not include the right to construct and maintain a road.

We hold that the trial court did not err in limiting the scope of the Easement in the ways challenged by Uptown, and we accordingly overrule Uptown's first issue.

*Whether summary judgment against Uptown on its prescriptive-easement claim was proper*

Uptown next argues that summary judgment against it on its prescriptive-easement claim entitling it to maintain a boat dock was improper because the evidence raised a material fact issue on each element of the claim. To establish a prescriptive easement, Uptown has the burden of proving that it used Neighbors' land in a particular manner that was (1) open, (2) notorious, (3) exclusive, and (4) adverse (5) continuously (6) for ten years or more. *See Harrington v. Dawson-Conway Ranch, Ltd.*, 372 S.W.3d 711, 717 (Tex. App.—Eastland 2012, pet. denied); *Cambridge Holdings, Ltd. v. Cambridge Condos. Council of Owners*, No. 03-08-00353-CV, 2010 WL 2330356, at *8 (Tex. App.—Austin June 11, 2010, no pet.) (mem. op.); *see also Davis*, 2012 WL 2499472, at *21 ("A prescriptive easement may arise from a property owner's knowing acquiescence (whether actual or constructive) in a claimant's adverse use of the property under a claim of right continuously for ten years or more."). Uptown does not allege that it has maintained a boat dock on Neighbors' properties for any period of time, much less the requisite ten years. Rather, it bases its prescriptive-easement claim on the Zieschangs' alleged adverse use of Neighbors' properties to tether and float a boat dock for over thirty years,

16

as expressed in its live petition: "Beginning no later than 1972, [Uptown's] predecessors in interest used the Defendants' property for purposes of maintaining and using a boat dock on the lake . . . [, and] such use was prescriptive and was, for at least 10 years, open, notorious, continuous, exclusive, and adverse." To support this theory, Uptown proffered documents demonstrating that through the chain of title it purportedly has "privity of estate" with the Zieschangs. *See Davis*, 2012 WL 2499472, at *21 (holding that ten-year requirement for prescriptive easement may be established by tacking successive interests if there is privity of estate between each holder and his successor and noting that adversity requirement for prescriptive easement is same as that required to prove adverse possession); *see also* Tex. Civ. Prac. & Rem. Code § 16.023 ("Tacking of Successive Interests").

Uptown proffered evidence in the form of Mrs. Zieschang's affidavit and deposition demonstrating that the Zieschangs had continuously maintained a floating boat dock on Lake Travis from 1973 until 2007. The dock was always anchored by cables attached at the same two places on the shore of the lake. Mrs. Zieschang averred that the George/Reed family "owned the land surrounding" the Zieschangs' property until 1996, when Volente bought the surrounding land and later sold some of it to each Neighbor. The Zieschangs removed the dock in 2007 only because of its deterioration and intended to replace it but never in fact did because of health and personal issues. Mrs. Zieschang testified that the seller from whom she and her husband purchased the Property, Warren Jones, "assured" her that they had the right to float a boat dock "because of the easement" as it was "stated in the deed." Mrs. Zieschang testified that when she and her husband conveyed the Property to Uptown in 2015, they intended to convey "all of the rights" and "anything that was in the deed that Warren Jones had given to us when we purchased the property," plus the area later purchased from Volente and "any easements"

17

they had because they had "no reason to keep anything." The title instruments in the record pertaining to the Zieschangs' conveyance of the property to Uptown expressly reference and convey the property itself and the Easement as originally appearing in the 1956 deed. They do not expressly reference any right or additional easement permitting maintenance of a boat dock or any claim thereto.

In its summary-judgment order, the trial court determined that there was "no evidence creating a genuine issue of material fact on each of the essential elements" of the prescriptive-easement claim. Having reviewed the record, we agree that there is no evidence of Uptown's continuous use of Neighbors' properties to tether and maintain a boat dock for ten years or more.

Although Uptown is correct that a successor in title may tack its period of adverse use or possession to that of its predecessor, *see Davis*, 2012 WL 2499472, at *21, there is no evidence of *any* period of use by Uptown (or by the Zieschangs after 2007) of Neighbors' properties for maintenance of a boat dock, and thus its attempt at "tacking" its adversity period onto the Zieschangs' is inapposite. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 343-44 (Tex. App.—San Antonio 2006, pet. denied). In other words, Uptown is essentially claiming a prescriptive easement through the Zieschangs' *matured* prescriptive right—that is, through the Zieschangs' prescriptive easement that had legally matured, if at all, well before 2007 when they dismantled the boat dock and later conveyed the property to Uptown. *See id.* Uptown is therefore not attempting to "tack" *any* period of its use of Neighbors' properties onto a period of the Zieschangs' same use to maintain a boat dock. As several of our sister courts have recognized, "[w]hen title by limitations has matured there is no further place for 'tacking' . . . . And the title so matured cannot be transferred orally, but can be conveyed only by an

18

instrument in writing." *See Haby v. Howard*, 757 S.W.2d 34, 38 (Tex. App.—San Antonio 1988, writ denied); *accord Loeffler*, 211 S.W.3d at 343; *Moser v. Batchelor*, No. 06-04-00096-CV, 2005 WL 1122667, at *4 (Tex. App.—Texarkana May 13, 2005, no pet.) (mem. op.); *Terrill v. Tuckness*, 985 S.W.2d 97, 110 (Tex. App.—San Antonio 1998, no pet.); *Dale v. Stringer*, 570 S.W.2d 414, 418 (Tex. App.—Texarkana 1978, writ ref'd n.r.e.); *Kleckner v. McClure*, 524 S.W.2d 608, 613 (Tex. App.—Fort Worth 1975, no writ).

This means that because the Zieschangs' prescriptive easement matured, if at all, *prior* to Uptown's ownership, the Zieschangs were required to convey their prescriptive easement to Uptown through a deed or other written instrument for it to claim the right to use Neighbors' property for a boat dock and thus prove privity of estate. *See Terrill*, 985 S.W.2d at 110; *Haby*, 757 S.W.2d at 38. Even taking all the evidence in the light most favorable to Uptown, no evidence demonstrates that, after the Zieschangs' prescriptive easement had matured (in 2007 or earlier), they conveyed such easement in writing to Uptown. Accordingly, there is no genuine issue of material fact on the element of Uptown's privity of estate with its predecessors that could meet the element of continuous use of Neighbors' properties for ten or more years, and the trial court did not err in granting Neighbors no-evidence summary judgment on Uptown's prescriptive-easement claim. Accordingly, we overrule Uptown's second issue.

### *Whether the trial court erred in awarding Neighbors attorney's fees*

In its third issue, Uptown argues that the trial court abused its discretion in awarding Neighbors attorney's fees, contending that (1) the evidence was legally insufficient to support any award of fees, and (2) it was neither equitable nor just to award fees because Uptown "prevailed on the main issue" in that Neighbors "wanted to eliminate Uptown's easement"

19

through their extinguishment counterclaims, which the trial court rejected, and Neighbors' counterclaims for declaratory judgment were "merely incidental" to its claims for relief.

While the UDJA authorizes awards of attorney's fees, it does not require an award of them to anyone. *See* Tex. Civ. Prac. & Rem. Code § 37.009. Rather, it "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Id.* Further, an award of attorney's fees is not dependent on a finding that the party "substantially prevailed." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996).

In its first argument, Uptown challenges the legal sufficiency of the evidence supporting the award to Neighbors of trial-level attorney's fees and conditional appellate attorney's fees. As for the trial-level fees, Newcastle's and Landers's evidence was in the form of affidavits of their attorneys, with attachments consisting of billing statements, and the averments therein directly tracked the requirements outlined in *Rohrmoos*. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019) (delineating minimum legally sufficient evidence to support award of attorney's fees). The respective affidavits of Newcastle's and Landers's attorneys contain the same type and level of information that this Court has previously held constitutes legally sufficient evidence to support an award of trial-level attorney's fees. *See, e.g.*, *Watts v. Watts*, No. 03-21-00693-CV, 2023 WL 8852152, at *8 (Tex. App.—Austin Dec. 22, 2023, no pet. h.) (mem. op.); *Cobb Dev. v. McCabe*, No. 03-

20

21-00524-CV, 2023 WL 4003513, at *12 (Tex. App.—Austin June 15, 2023, pet. filed) (mem. op.); *King v. King*, No. 03-22-00329-CV, 2023 WL 3873496, at *14 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op.).

Also within this argument, Uptown contends that Neighbors' attorneys "piggybacked" on each other's work in that many of their pleadings and filings were identical or incorporated by reference the other's. However, Uptown does not cite any authority determining that co-parties' benefitting from one another's pleadings or arguments makes their evidence of attorney's fees legally insufficient, and we have not found any. Furthermore, Uptown does not identify any specific evidence of attorney's fees incurred by either Neighbor that is purportedly unnecessary and unreasonable because it is duplicative or merely "piggybacks," and we are not required to sift through the record to determine whether any of it is. *See Green v. Port of Call Homeowners Ass'n*, No. 03-18-00264-CV, 2018 WL 4100855, at *6 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.) ("As an appellate court, it is not our duty to perform an independent review of the summary-judgment record for evidence supporting appellants' position."). We accordingly overrule the portion of Uptown's third issue complaining about the legal sufficiency of the evidence to support the award of trial-level attorney's fees.

However, we determine that Uptown's argument about the trial court's award of conditional appellate attorney's fees has merit. To recover conditional appellate attorney's fees, a claimant needs to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). The affidavits of Neighbors' attorneys do not address appellate attorney's fees at all, much less opine on the estimated fees or anticipated tasks reasonably necessary to defend an appeal before this Court or for any proceedings before the

21

supreme court. *Cf. id.* When discretionary appellate attorney's fees are authorized but the evidence is legally insufficient to support an award, the proper remedy is to reverse and remand for a redetermination of attorney's fees. *See Faith P. & Charles L. Bybee Found. v. Knutzen*, 681 S.W.3d 818, 840–41 (Tex. App.—Austin 2023, no pet.) (reversing and remanding for redetermination of appellate attorney's fees under UDJA where affidavit provided "no evidence any about such tasks [required by *Yowell*] for an appeal"); *Jimmie Luecke Children P'ship, Ltd. v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162, at *8 (Tex. App.—Austin Jan. 27, 2022, pet. denied) (mem. op.) (same); *Porter v. Porter*, No. 04-20-00229-CV, 2021 WL 2117923, at *5 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.) (reversing and remanding issue of trial and appellate attorney's fees in divorce suit where party did not offer any evidence of appellate attorney's fees and evidence of trial fees was insufficiently detailed). The awards of conditional appellate fees are therefore not supported by legally sufficient evidence and must be reversed, and we sustain this portion of Uptown's third issue. *See Droemer*, 2022 WL 243162, at *8; *Porter*, 2021 WL 2117923, at *5.

In its second argument within this issue, Uptown contends that it was inequitable and unjust to award Neighbors any attorney's fees because (1) they did not substantially prevail on the merits and (2) their claims were merely "incidental" to its claims for relief. As we have already noted, however, prevailing on the merits is not a requisite of a fee award under the UDJA. *See Barshop*, 925 S.W.2d at 637. Secondly, to the extent that which party "substantially prevailed" on the merits has bearing on whether an award is equitable and just, our review of the record leads us to conclude that at the core of the parties' dispute was the question of whether Uptown has a right to build and maintain a boat dock, ramp, and road on Neighbors' properties. The trial court determined that question against Uptown, and we have affirmed such

22

determination. Thus, we cannot conclude that the trial court abused its discretion in concluding that an award of fees to Neighbors was equitable and just.

We also are not persuaded by Uptown's argument that Neighbors' claims were merely "incidental" to its claims for relief and that, therefore, an attorney's fee award to them was inequitable and unjust. It was Neighbors who first sought a declaratory judgment regarding the Easement's scope. In contrast, Uptown originally filed a cause of action under a prescriptive-easement theory only, and it was not until later in an amended petition—filed *after* Neighbors had counterclaimed for a declaratory judgment regarding the Easement's limited scope—that Uptown added its claim for declaratory judgment. Even though the lawsuit began as an attempt by Uptown to establish a prescriptive easement allowing a boat dock, upon Neighbors' counterclaims the dispute expanded to include requests by both parties to construe the express Easement and determine whether it permitted rights including a boat dock but also a road and ramp. Construction of the Easement and its scope was at the center of the parties' dispute and falls squarely under the UDJA. *See* Tex. Civ. Prac. & Rem. Code § 37.004 (providing that person interested under deed may have determined "any question of construction or validity arising" thereunder and may obtain declaration of rights thereunder).

We conclude that Neighbors' UDJA claims were separate and distinct from Uptown's original prescriptive-easement claim, were not wholly subsumed therein or redundant thereof, and thus were not "merely incidental" to it. *See 12636 Research Ltd. v. Indian Bros., Inc.*, No. 03-19-00078-CV, 2021 WL 417027, at \*18-19 (Tex. App.—Austin Feb. 5, 2021, no pet.) (mem. op.); *cf. Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 301 (Tex. 2011) (concluding that plaintiff's claim arose squarely under Texas Public Information Act (TPIA), which did not allow for recovery of attorney's fees under circumstances, and that

23

attempt to recover fees under UDJA was improper because recovery thereunder was "merely incidental" to TPIA claim for relief). We overrule this final portion of Uptown's third issue.

*Neighbors' issues*

In two cross-issues, Newcastle argues that the trial court erred in (1) denying its motion for summary judgment on its claim that the Easement was extinguished, and (2) failing to award it the entirety of its requested attorney's fees. In one cross-issue, Landers argues that the trial court abused its discretion in failing to award him the entirety of his requested attorney's fees.

*Whether Newcastle was entitled to summary judgment on its extinguishment claim*

Newcastle moved for summary judgment on its counterclaim in which it asserted that the Easement had been extinguished under the doctrine of merger when by a 1997 deed the Zieschangs acquired the portion of the Easement described by metes and bounds. The undisputed summary-judgment evidence establishes that in 1972 the Zieschangs built a house on what they believed was their property. However, they realized sometime later that the house, in fact, sat largely outside their property boundaries and partly within the portion of the Easement described by metes and bounds. In 1997, the property on which the Zieschangs' house sat belonged to third party Volente. In 1997, Volente by quitclaim deed conveyed the metes-and-bounds portion of the Easement to the Zieschangs, plus additional land extending the Zieschang's fee title southward some distance and eastward to the 670-foot contour. Newcastle contends that Volente's conveyance of the metes-and-bounds portion of the Easement extinguished the Easement in its entirety. We disagree.

24

"Under the merger doctrine, if an easement exists and then the owner of that easement acquires a greater estate, the two estates merge into the greater of the two and the lesser is extinguished." *Cecola v. Ruley*, 12 S.W.3d 848, 852 (Tex. App.—Texarkana 2000, no pet.). This is because "[o]ne who owns fee simple title no longer needs an easement across his own property, since the fee simple gives him the right to use all of the property." *Id.*; *see also Howell v. Estes*, 12 S.W. 62, 62 (Tex. 1888) ("The principle is elementary that, to constitute an easement, the dominant and the servient estates must be held by different owners; and when the owner of an estate enjoys an easement over another, and acquires title to the latter, the easement is thereby extinguished."). Under the merger doctrine, an easement is terminated when "all the benefits and burdens come into a single ownership." *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 578 n.7 (Tex. App.—San Antonio 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020) (citation omitted).

Newcastle's argument fails on this last point because less than all the benefits and burdens came into a single ownership by virtue of the Volente quitclaim deed. By such deed the Zieschangs acquired only (1) the portion of the Easement Area specified by metes and bounds in the 1956 original deed (which extended eastward only up to the shoreline in 1956, which was then about thirty feet west of the 670-foot contour) plus (2) the land to the east of the 1956 shoreline as far as the 670-foot contour. However, the Easement Area includes not just those two areas but *all* the land between the north and south boundaries of the metes-and-bounds area that extends eastward *all the way to the water's edge*, as it changes over time. That area's fee title remained held by Volente and is now held by Neighbors. Accordingly, the trial court did not err in denying Newcastle's motion for summary judgment on its counterclaim of extinguishment through merger of the Easement. We overrule Newcastle's second issue.

25

*Whether the trial court abused its discretion in its award of attorney's fees*

Newcastle and Landers both assert the trial court abused its discretion in failing to award them the entirety of their requested attorney's fees. As already noted, we review the trial court's award of attorney's fees under the UDJA for an abuse of discretion, which occurs when a trial court rules arbitrarily, unreasonably, or without regard to guiding legal principles or without supporting evidence. *Bocquet*, 972 S.W.2d at 21. Landers and Newcastle each argues that the trial court's reduction by about sixty percent of its requested attorney's fees—which were supported by "undisputed evidence"—was arbitrary.

To support his argument, Landers cites non-UDJA cases, in which an award of attorney's fees to the prevailing party was statutorily mandated and non-discretionary rather than subject to the trial court's discretion. *See Rohrmoos*, 578 S.W.3d at 487 (noting that in contract cases, statute authorizes award of fees to prevailing party); *Hoelscher v. Kilman*, No. 03-04-00440-CV, 2006 WL 358238, at *3–4 (Tex. App.—Austin Feb. 16, 2006, no pet.) (mem. op.) (noting that statute stating party "may recover" fees for breach-of-contract claim was not discretionary, unlike statutes such as UDJA stating that court "may award" fees). But, as we have already noted, the UDJA entrusts the trial court with discretion to conclude that it is not equitable or just to award even reasonable and necessary attorney's fees. *See Bocquet*, 972 S.W.2d at 21; *see also* Tex. Civ. Prac. & Rem. Code § 37.009 (Courts "may award costs and reasonable and necessary attorney's fees as are equitable and just."). Moreover, in UDJA actions, "courts have the authority to award less than an amount determined by a jury to be reasonable and necessary and . . . this is a matter committed to the trial court's sound discretion." *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004). That is, the determination

of whether an award of attorney's fees would be equitable and just is not susceptible to direct proof but instead is a matter of fairness in light of all the circumstances. *See id.* at 162–63.

Further, as we have already observed, the award of attorney's fees is not dependent on a finding that the party "substantially prevailed." *Barshop*, 925 S.W.2d at 637. The trial court is not required to award attorney's fees to the prevailing party in a declaratory-judgment action and may even award attorney's fees to the non-prevailing party. *Moosavideen v. Garrett*, 300 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "Thus, the attorney's fees provision grants the trial court broad discretion to (i) afford all parties the opportunity to request fees; (ii) decline to award fees; and (iii) allow an award only when reasonable, necessary, equitable, and just." *Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.). To find an abuse of discretion, the trial court must have ruled arbitrarily, unreasonably, or without reference to any guiding principles or have ruled without any supporting evidence. *See Bocquet*, 972 S.W.2d at 21. Although Uptown did not obtain the full relief it sought, it did succeed in obtaining a declaration that it has legal rights to access the lake by traversing Neighbors' properties and to recreate on the shore, in contrast to Neighbors' claims that such rights no longer exist. The trial court reasonably could have made an equitable and just determination, in light of these circumstances and its legal conclusions, that Landers was not entitled to the entire amount of fees he incurred in this lawsuit.

Newcastle contends that the trial court improperly awarded it fees for only those claims on which it prevailed, as purportedly indicated by the following statement: "[T]he Court finds that the Defendants . . . are entitled to recoup the portions of their reasonable, necessary, equitable and just attorney's fees and expenses related to the declarations found by the Court pursuant to the [UDJA]." To the contrary, we read that statement to reflect not a decision by the

27

trial court to award fees for only the claims on which Neighbors prevailed, but to award fees for only the claims falling under the UDJA's purview and for which attorney's fees may be recovered. The prescriptive-easement claim (and defenses thereto) are not subject to the UDJA, *cf.* Tex. Civ. Prac. & Rem. Code § 37.004 ("Subject Matter of Relief"), and thus recovery of attorney's fees would be governed not by the UDJA but by the American Rule requiring each party to bear its own fees, *see Rohrmoos Venture*, 578 S.W.3d at 483–84. However, even if Newcastle's reading of this statement in the trial court's order were accurate, the trial court nonetheless was entitled to consider who was the prevailing party as to each issue and claim in the case when considering the equity and justness of assessing fees because courts are to consider all the circumstances when making awards. *See Ridge Oil Co.*, 148 S.W.3d at 162; *Moosavideen*, 300 S.W.3d at 802.

In light of all the circumstances here, including Uptown's prevailing on Neighbors' extinguishment claims and the fact that the prescriptive-easement claim was outside the UDJA's purview, we cannot conclude that the trial court acted arbitrarily or abused its discretion in reducing Neighbors' respective requests for attorney's fees. We overrule Landers's sole cross-issue and Newcastle's first cross-issue.

## CONCLUSION

We affirm the trial court's Amended Order on Cross Motions for Summary Judgment. We also affirm the trial court's Order on Defendants' Motions for Award of Attorney's Fees except for the portion awarding Landers and Newcastle contingent appellate attorney's fees, which portion we reverse. We remand for redetermination the issue of the

28

reasonable, necessary, equitable, and just contingent appellate attorney's fees, if any, to which each Landers and Newcastle is entitled.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Affirmed in Part; Reversed and Remanded in Part

Filed:   March 22, 2024